**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**KAREN CASTILLO,**

    **Plaintiff,**

**v.**                                                           **Case No. 8:06-cv-1359-T-TBM**

**MICHAEL J. ASTRUE[1],
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was 36 years of age at the time of her administrative hearing in January 2006. She stands 5' 5" tall and weighed 219 pounds. Plaintiff has two years of community college education with a certificate in office skills. Her past relevant work was as a sales clerk, receptionist, home health care aide, data entry clerk, and pharmacy clerk. Plaintiff applied for Social Security disability benefits in November 2003, alleging disability as of

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

December 1, 2002, by reason of low back pain. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified she could no longer work because of back pain arising from an on-the-job injury. By her account, she had surgery in December 2002, and on her doctor's advice, she attempted to work again for thirty hours a week doing telephone sales in February 2003. She stopped working altogether in April 2003 because she was unable to do the job due to her severe pain and medication. She settled her workers compensation claim. She describes her pain as constant. When asked if she could return to her job in data entry, Plaintiff indicated she could not because she cannot sit for long periods due to her pain. By her account, she takes Hydrocodone, Naproxen, and Soma, but the medication has not helped much.

Plaintiff has difficulty sleeping, but claims no other problem with her mood or emotions. She is prescribed Trazadone and Lexapro to help her sleep better. She describes her sleep as restless, with difficulty sleeping three out of four nights. Her lack of sleep makes her restless, edgy and irritable during the day. She takes a forty-five minute nap every day. Plaintiff also has a "lazy" right eye, but she sees okay with glasses.

Plaintiff cares for her baby during the day. She does some light housework, cooking, and washing dishes. Her husband does the rest. She drives daily, but for short distances. She has some difficulty dressing herself. She also has difficulty bending and stooping. She

socializes with her family, but otherwise stays to herself, not wanting others to see her pain.

Plaintiff can lift and carry her baby who weighs 27 pounds. She can sit for only 30 minutes and stand for 15-20 minutes. She walks for exercise and can walk 3 blocks out and back. She uses the baby stroller for support and balance while walking. The walk makes her tired. See Plaintiff's testimony (R. 37-51).

William Slaven, a vocational expert ("VE") testified on an assumption of a person of Plaintiff's age, education, and work experience capable of performing light exertional work with limitations for a sit-stand option, occasional postural activities, and no crawling. On this hypothetical, the VE opined that such person could perform her past work as a telephone sales representative, data entry clerk, and receptionist. If such person could only lift five pounds and sit for two to three hours, then only part-time work would be available. Assuming such person required a 45 minute nap every day as Plaintiff testified, no full-time work at any exertional level would be available. Counsel for the Plaintiff had no questions for the witness. See VE's testimony (R. 51-54).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of February 24, 2006, the ALJ determined that while Plaintiff has severe impairments related to back disorder and obesity, she nonetheless had the residual functional capacity ("RFC") to perform a limited range of light work consistent with his first hypothetical to the VE. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the Plaintiff was determined

to be not disabled. (R. 12-19). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff cites to several statements or findings by the ALJ and urges that they are incorrect in light of other evidence, and at a minimum, require that the case be remanded. Thus, she urges that the statements by the ALJ that (1) objective evidence did not show compromise of a nerve root or the spinal cord (R. 16), and (2) the medical evidence shows the claimant had a lumbar disc herniation which did not impinge on a nerve root (R. 17), are contradicted by the discharge notes from Jeffrey S. Walker, M.D., who performed an L4 to S1

5

laminectomy and a right L5-S1 diskectomy on Plaintiff in December 2002. By these notes, a prior myelogram had revealed "effacement" of the L5-S1 nerve root and the surgery obtained good decompression of the right S1 nerve root (R. 229). She urges these erroneous statements disprove the ALJ's conclusion that the clinical and objective evidence did not fully support Plaintiff's pain complaints. Similarly, Plaintiff finds fault with the ALJ's statement that her pain was well managed with conservative treatment and mild pain medications (R. 1). In particular, she notes that one of the citations relied upon by the ALJ in support of this finding, Exh. 10F to the medical record, reflects nothing about pain relief and another, Exh. 12F, would support that Plaintiff's pain medications were not "mild." She urges that a third citation, Exh. 13F, reflects that conservative care had not improved the pain.

Initially, I find that the statement by the ALJ in addressing whether Plaintiff's back impairment met or equaled listing 1.04, i.e., that the objective MRI and CT evidence did not reveal compromise of a nerve root or the spinal canal, appears accurate. See (R. 194, 209, 218). The statement made in connection with the ALJ's consideration of Plaintiff's RFC, namely, that her lumbar disc herniation did not impinge on a nerve root, also appears correct. Id. Even if the accuracy of these statements is called into question by the comments of Dr. Walker concerning an "effacement" of the L5-S1 nerve root and "decompression" as noted in his surgical report, when the statements are considered in the context of Plaintiff's application for benefits, any inaccuracy in these statements, in and of itself, means little. Here, Plaintiff claims she became disabled December 1, 2002, by reason of her back pain. On December 12, 2002, Dr. Walker operated on her back for the purpose of relieving her leg pain not her back pain, which he said was musculoskeletal and attributable to her obesity. (R. 231). By his

notes, the surgery was successful in decompression of any impinged nerve roots. (R. 232). By the discharge summary, Plaintiff was sent home without any leg pain and with her neurologic condition intact. (R. 229). Thereafter, as the ALJ noted, Plaintiff was cleared to return to light work and she did so.[2] Even if the statements by the ALJ were inaccurate for Plaintiff's condition prior to surgery, Plaintiff makes no showing that her condition actually met or equaled all the other criteria for listing 1.04 and significantly, she fails to address any nerve root or cord impingement after the corrective surgery. Thus, while I find the statements accurate, even if they are not, the inaccuracy in and of itself is of little consequence. The real issue in this is the ALJ's handling of Plaintiff's pain complaints.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported

---

[2] Post-surgery, Plaintiff was admitted to Bayfront Medical Center on December 30, 2002, for an infection in her lumbar wound. After a debridement of the wound and antibiotic therapy, she was released on January 2, 2003. (R. 350-51). Follow-up on the wound indicated she eventually recovered well. (R. 374-76). Follow-up with Dr. Walker noted good results from the surgery but problems with the wound healing due to psoriasis. (R. 385-86). In February 2003, she was released to return to light duty work. (R. 380, 382). Per Dr. Walker's notes, Plaintiff was back at work and doing well in April 2003. (R. 439).

by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1561-62 (1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale, 831 F.2d at 1012.

As the decision reflects, the ALJ credited Plaintiff with impairments which could reasonably be expected to produce her symptoms but not to the extent claimed. (R. 17). Under the applicable standard, an ALJ may discount the subjective testimony in this manner on explicit and adequate findings. Here, after fairly summarizing the Plaintiff's subjective testimony, the ALJ set forth his reasons for rejecting the same to the extent that Plaintiff claimed it render her disabled. Principally, the ALJ relied upon the medical record in doing so. Additionally, he cited to Plaintiff's own testimony concerning what she was capable of doing and her relatively active daily regimen. See (R. 17). To the extent that the ALJ cited the objective record as part of his reasons for discounting Plaintiff's pain claims, I again find his conclusion accurate. But even if the statements weren't entirely accurate for the period prior to her surgery, the objective and clinical record after Plaintiff's surgery (and alleged onset date) fail to support her claim for disabling pain. Nothing in the reports of her surgeon, Dr. Walker, or those of her primary care doctor support the disabling pain complaints.

Insofar as Plaintiff complains that the statements that she managed her back pain with "conservative care" is erroneous in light of the medical record, the statement has to be read in the proper context. Plaintiff is correct that Dr. Walker, in support of his decision to

8

perform surgery on the Plaintiff, noted that conservative care had not improved her condition. However, the ALJ is correct that after performing successful surgery, Dr. Walker, as well as Dr. Martinez, both treated Plaintiff conservatively with rest, medications and later, an order for physical therapy. Ultimately, Dr. Walker found Plaintiff fit enough to return to work on light duty for thirty hours a week. In the context of this claim, the conclusion by the ALJ was not erroneous. As for the characterization of Plaintiff's medication as "mild," Plaintiff may well be correct that the description is inappropriate. The record really does not address the point. Even if Plaintiff is correct, however, a remand on this basis would serve no useful purpose. Here, Plaintiff's doctors chose to treat her with a number of medications both before and after her surgery. Plaintiff claimed that it didn't help and she was left completely disabled. This was rejected for a number of reasons by the ALJ. In my view, whether her medication was "mild" or not is not really controlling. Even if the ALJ should not have discounted the credibility of her pain complaints in this fashion, there are other adequate reasons for doing so which are supported by substantial evidence.

As for the ALJ's statement that Plaintiff lifts 25 pounds "everyday" and can walk 6 blocks at a time, these are fair comments based on the Plaintiff's testimony. By her account, Plaintiff was caring for her 15-month old baby daily at the time of the hearing. The baby weighed 27 pounds at the time. While Plaintiff herself may not have used the word "everyday" in connection with how often she lifted her baby (R. 39), it is not an unreasonable assumption that she did so in providing her care. In any event, without qualification, Plaintiff testified that she can lift and carry "like 25 to 27 pounds." (R. 44). She also testified that she walked for exercise and that she would go out 3 blocks and return. She did testify that she

leaned on the baby stroller for support and balance. Thus, any suggestion by the ALJ that she claimed to do so without support is incorrect. However, the medical records again contradict Plaintiff's claim as Dr. Martinez opined that Plaintiff did not need an assistive device for ambulation and could walk on her toes and heels. (R. 462). The ALJ could have done a better job on this point, but his end conclusion that Plaintiff did not need an assistive device finds support in the medical record.

By my review, when the decision is considered in full, the ALJ has stated adequate reasons for discounting Plaintiff's claims of disabling pain.

Finally, Plaintiff complains that the ALJ's conclusion that she could do her past work as a telephone sales representative, data entry clerk, and receptionist is contrary to the testimony of the VE. Although she concedes that the VE gave this opinion in response to the ALJ's original hypothetical, she suggests the ALJ should have instead adopted the VE's response to either of the next two hypothetical questions, the first of which assumed limitations found in an assessment from Dr. Martinez back in October 2002, and the second of which assumed that Plaintiff's testimony was fully credible. I disagree. First, the original hypothetical question assumed limitations consistent with the medical record and in particular, the reports of Plaintiff's treating doctors. Plaintiff does not demonstrate the error in these assumptions on this appeal.[3] Further, as set forth above, this latter contention that Plaintiff's testimony was fully credible was rejected by the ALJ based on a contrary medical

---

[3] It is worth noting again that the Plaintiff's representative asked no questions of the VE during the administrative hearing although he had the opportunity to pose his own hypothetical questions had he wished to.

10

record and Plaintiff's own testimony concerning her activities. Thus, the ALJ was not obliged to include such limitations in his hypothetical questions nor accept them as true as part of his RFC determination. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (providing that an ALJ is not required to include in a hypothetical question those limitations he concludes are not credible); House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994) (same). As for the assessment by Dr. Martinez, it was rendered prior to the date Plaintiff claimed to be disabled, and more importantly, prior to her surgery, and was simply inapposite to her condition thereafter. Thus, a review of Dr. Martinez's records after the surgery by Dr. Walker reveal no similar assessment, and significantly, the imposition of no functional limitations. In an assessment in June of 2004, he did opine that Plaintiff had a 10% loss of motion in the pelvic girdle area and lower spine, and was unable to squat, crawl or reach behind herself effectively, and her flexion at the waist was limited to 15 degrees. He also noted a slow gait due to back pain and spasms. However, this assessment is a far cry from the one he gave before Plaintiff's surgery. Compare (R. 179) with (R. 462). Under the standard applicable in this circuit, an ALJ may reject the opinions of a treating doctor for good cause. MacGregor v. Bowen, 786 F.2d 1050 (11th Cir. 1986). As reflected in the decision, the ALJ properly discounted these opinions by the doctor. (R. 18). In these circumstances, the ALJ was not required to accept the earlier limitations as part of his RFC assessment and, as noted above, he was not obliged to include the limitations in a hypothetical to the VE. Although he did so, the opinion rendered on these limitations is of no significance to the final conclusions by the ALJ in this case absent a showing that the ALJ's RFC determination is in error. That is not demonstrated on this appeal.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 2nd day of August 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record